United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Ralph Musilli                                              Case No. 06-55963
        Debtor.                          Chapter 7
_____/                    Hon. Steven Rhodes

Barbara Droomers, As Personal Representative
of the Estate of Warren Droomers, Deceased,                Adv. Pro. 07-4068
        Plaintiff,

v.

Ralph Musilli,
        Defendant.
_____/
                                                           Case No. 06-58347
In re:                                                     Chapter 7
Walter Baumgardner,                                        Hon. Steven Rhodes
        Debtor.
_____/

Barbara Droomers, As Personal Representative
of the Estate of Warren Droomers, Deceased,                Adv. Pro. 07-4107
       Plaintiff,

v.

Walter Baumgardner,
       Defendant.
_____/

Opinion

    These cases involve significant litigation between the parties. The plaintiff, Barbara Droomers, As Personal Representative of the Estate of Warren Droomers, Deceased, seeks to have the debt owed by these two debtors, Ralph Musilli and Walter Baumgardner, held nondischargeable.

She also seeks denial of the debtors' discharges. For the reasons stated herein, the Court holds that the debt is nondischargeable under § 523(a)(6) and that the debtors' discharges are denied under § 727(a)(7).

## I. Background[1]

Ralph Musilli and Walter Baumgardner are former shareholders in the law firm of Musilli, Baumgardner, Wagner & Parnell, P.C. (MBWP). In 1999, MBWP received a fee of over one-million dollars in a personal injury case. Attorney Warren Droomers[2] sued MBWP regarding a dispute over a contingent fee related to that case. Droomers asserted that he was owed a one-third contingent referral fee or, in the alternative, quantum meruit for legal services he performed in the case.

During the course of the litigation, Droomers filed a "motion for relief under the Uniform Fraudulent Transfer Act" (UFTA), M.C.L. § 566.31. In that motion, Droomers asserted that MBWP violated the UFTA by failing to set aside approximately $350,000 for him after it received the contingent fee and that it improperly transferred the money from the firm to its shareholders. Droomers asserted that the transfer would make it difficult or impossible for him to ultimately collect on his claim and asked the state court to require MBWP to escrow the money into a separate escrow account. The state court granted the motion on December 19, 2002, and ordered MBWP to pay approximately $350,000 into an escrow account and to refrain from transferring any assets out of the firm until it had done so. Nevertheless, it is undisputed that MBWP never escrowed the funds.

After a bench trial that concluded in May, 2003, the state court found in favor of Droomers

---

1. Much of this background section is based on facts determined by the United States District Court in its opinion entered October 23, 2006.

2. Following Warren Droomers' death, his estate continued the litigation.

with respect to his quantum meruit claim and awarded him $240,000 plus costs and statutory interest.

On October 10, 2003, Droomers filed an ex parte motion for order to show cause why MBWP and its agents, officers and attorneys, Ralph Musilli, Walter Baumgardner and John Parnell, should not be held in contempt for failing to comply with the court's order requiring the escrow account. On December 16, 2003, the state court held Musilli and Baumgardner in contempt based on their admissions of knowingly violating the court order. Following this ruling, MBWP liquidated its assets, changed its name to Shores Legal Services and filed a chapter 11 bankruptcy petition.

On June 30, 2005, the Michigan Court of Appeals upheld the finding of contempt but remanded the matter for a determination of whether the contempt was criminal or civil. On remand, the state court held a hearing and ruled the contempts were criminal and entered a judgment of criminal contempt. Each attorney was sentenced to 30 days in jail, fined $250 and ordered to pay $431,350 in damages and over $16,000 in costs.

Following the ruling, Musilli and Baumgardner entered into a settlement agreement with the plaintiff, which included vacating the state court criminal contempt judgments against them. However, Musilli and Baumgardner ultimately defaulted on the settlement.

Musilli and Baumgardner also attempted to avoid the criminal contempt judgment by filing a federal lawsuit against the plaintiff's attorneys and the state court judge. The district court dismissed the lawsuit as frivolous and awarded sanctions against Musilli and Baumgardner. While the issue of sanctions was pending before the district court, Musilli and Baumgardner individually filed chapter 7 bankruptcy petitions.

Ultimately, the state court reinstated the finding of criminal contempt, at least as to Musilli.

The plaintiff filed the present adversary proceedings against Musilli and Baumgardner seeking

denial of their discharges under § 727(a)(7) and determination that the debts owed to the plaintiff are nondischargeable pursuant to § 523(a)(4), (a)(6), and/or (a)(7).

## II. Motion to Dismiss

Musilli and Baumgardner have filed motions to dismiss under Rule 12(b)(6) for failure to state a claim. When deciding a motion to dismiss, the Court is required to "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993).

Musilli and Baumgardner assert that the plaintiff's claim under 11 U.S.C. § 727(a)(7) should be dismissed as untimely. Musilli and Baumgardner assert that the transfers of property occurred in 1999 and early 2000 and thus exceed the one year look back period for the present bankruptcy cases which were filed December 11, 2006, and February 7, 2007. Section 727(a)(7) denies a discharge for an act specified in paragraph 2 committed in the year preceding filing or during the case of an insider's bankruptcy. Count I alleges that Musilli and Baumgardner transferred property of the estate of Shores Legal Services within the year prior to the filing of its petition with the intent to hinder, delay or defraud Droomers. Accordingly, the plaintiff has properly alleged a claim under § 727(a)(7). The motion to dismiss Count I is denied.

Musilli and Baumgardner assert that the § 523(a)(7) count should be dismissed because the plaintiff lacks standing. 11 U.S.C. § 523(a)(7) states that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . ." For a debt to be

4

nondischargeable pursuant to § 523(a)(7), three requirements must be satisfied: the debt must be (1) for a fine, penalty or forfeiture, and it must also be (2) payable to and for the benefit of a governmental unit, but (3) may not be compensation for actual pecuniary loss. *Empire Bonding Agency v. Lopes* (*In re Lopes*), 339 B.R. 82, 86 (Bankr. S.D.N.Y. 2006). Additionally, courts have held that only the governmental unit has standing to bring a § 523(a)(7) cause of action. *See Kentucky Central Ins. Co. v. Lueking* (*In re Lueking*), 58 B.R. 472 (Bankr. E.D. Tenn. 1986). The plaintiff is not a governmental unit and therefore lacks standing to bring a claim under § 523(a)(7). Accordingly, Count IV of the complaint is dismissed.

Musilli and Baumgardner's motion to dismiss does not adequately articulate the basis for dismissing the remaining counts. Further, the plaintiff has sufficiently pled the remaining claims to withstand a motion to dismiss.

### III. Motion for Summary Judgment

The plaintiff has filed a motion for summary judgment against Musilli and Baumgardner.

> Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.

*United States v. Certain Real Prop.* 800 F. Supp. 547, 549-50 (E.D. Mich. 1992).

5

## A. Section 523(a)(6)

In the present case, the plaintiff asserts that this court should give collateral estoppel effect to the state court judgment finding Musilli and Baumgardner in contempt. The plaintiff asserts that giving collateral estoppel effect to the judgment would require a finding that the debt at issue is nondischargeable pursuant to § 523(a)(6).

The doctrine of collateral estoppel "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 461 (6th Cir. 1999) (quoting *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)). The doctrine of collateral estoppel is applicable to nondischargeability causes of action. *Grogan v. Garner*, 498 U.S. 279, 284-85, 111 S. Ct. 654, 656 (1991). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed.2d 56 (1984)).

Under Michigan law, collateral estoppel applies when

> 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630-31 (1990))).

The first element is met. There is an identity of parties across the proceedings. Musilli and

Baumgardner were shareholders of the law firm that was subject to the original judgment. When the firm failed to follow the state court's escrow order, Musilli and Baumgardner were held in contempt of that order.

The second element is also met. The criminal contempt order is a valid, final judgment against Musilli and Baumgardner personally.

The fourth element is also met. Musilli and Baumgardner have had a full and fair opportunity to litigate the issue in the earlier proceeding. They were represented in the state court proceedings and at the appellate level.

The third element requires more extensive analysis. The Court must determine whether the issue before it in the present litigation was actually litigated and necessarily determined in the prior proceeding. The prior proceedings culminated in a contempt order that found that Musilli and Baumgardner injured Droomers by their flagrant violations of court orders.

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) *Geiger v. Kawaauhau*, 113 F.3d 848 (8th Cir. 1997), *aff'd*, 523 U.S. 57, 118 S.Ct. 974 (1998) instructs that for a debt to be nondischargeable under §523(a)(6), the debtor must have intended not only his conduct, but also the consequences of his conduct. Interpreting *Geiger* and looking to the Restatement for guidance, the Sixth Circuit has held that a willful and malicious injury as defined under §523(a)(6) is one where the debtor "desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it." *In re Markowitz*, 190 F.3d at 464 (quoting Restatement (Second) of Torts §8A, at 15 (1964)).

In *Siemer v. Nangle*, (*In re Nangle*), 274 F.3d 481, 484 (8th Cir. 2001), the Eighth Circuit

7

Court of Appeals gave collateral estoppel effect to a state court contempt judgment. The court examined the findings made by the state court and found that the state court's order specifically made a finding that the debtor's conduct was willful. Additionally, the court determined that the contempt order established a malicious injury because the state court had determined that the debtor's "actions were designed to interfere with [plaintiff's] efforts to collect the judgment entered against him herein." *Id*. at 484. The Eighth Circuit concluded that the debtor's actions were malicious because it was "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm." *Id*.

Likewise, this Court has examined the factual circumstances resulting in the finding of contempt to determine whether the debt is nondischargeable. The judgment in the present case arose from a debt owed to Droomers, based on his work with MBWP as of counsel. After Droomers' estate won a quantum meruit verdict, MBWP refused to pay. Through its shareholders, Musilli and Baumgardner, MBWP violated a court order requiring it to place funds in escrow and enjoining the transferring funds from the law firm until the debt was paid. As a result, the Oakland County Circuit Court held Musilli and Baumgardner in contempt and entered a judgment against them requiring them to pay damages to Droomers. The state court held that Musilli and Baumgardner transferred assets in violation of the court's order and accepted the transfer of assets in violation of the court's order. (December 14, 2005, Order.) The Michigan Court of Appeals affirmed the Oakland County Circuit Court, holding that the actions of Musilli and Baumgardner were a willful disregard or disobedience of a court order. (June 30, 2005, Court of Appeals Opinion). The Oakland County Circuit Court specifically held that Droomers "was damaged in the amount of $431,350 by the contempt of Ralph Musilli and Walter Baumgardner." (December 14, 2005, Order).

The record establishes that Musilli and Baumgardner knew that their violation of the court order and the transferring of the assets of MBWP to themselves and others would injure Droomers. Therefore, the debt is owed due to a willful and malicious injury. Summary judgment on the § 523(a)(6) count is appropriate as to Musilli. At the time of the hearing in this case, plaintiff's counsel could not verify that the contempt order had been reinstated as to Baumgardner. Accordingly, when the counsel certifies to this court that the contempt order against Baumgardner has been reinstated, the summary judgment on the § 523(a)(6) count will be appropriate as to him as well.

### B. Section 523(a)(4)

Droomers asserts that Musilli and Baumgardner violated their fiduciary duty to him through their failure to escrow funds as required by the state court order. Debts incurred through defalcation of a fiduciary duty are nondischargeable pursuant to § 523(a)(4). Accordingly, Droomers asserts the debt owed is nondischargeable.

The Sixth Circuit Court of Appeals has recently reiterated the elements of a § 523(a)(4) cause of action for defalcation in a fiduciary capacity. *Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci* (*In re Bucci*), 493 F.3d 635 (6th Cir. 2007). A defalcation renders a debt nondischargeable "when the preponderance of the evidence establishes (1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Id.* at 639 (quoting *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005) (internal quotation marks omitted)). "The Sixth Circuit 'construes the term "fiduciary capacity" found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances.'" *Id.* (*quoting Blaszak*, 397 F.3d at 391.) Additionally, application of the defalcation provision is

9

07-04068-swr    Doc 28    Filed 12/26/07    Entered 12/26/07 16:02:31    Page 9 of 13

limited to express or technical trusts and not extended to constructive or implied trusts imposed by operation of law as a matter of equity. *Id.* at 639-40.

The debt owed by Musilli and Baumgardner does not fall under the § 523(a)(4) exception to dischargeability. First, the plaintiff has not established that Musilli and Baumgardner had a preexisting fiduciary relationship with him. The fact that they were lawyers is not enough to establish a fiduciary obligation in the context of § 523(a)(4). *See Blaszak*, 397 F.3d at 391 (citing *R.E. America, Inc. v. Garver* (*In re Garver*), 116 F.3d 176, 179 (6th Cir. 1997)).

Second, the plaintiff has not established that the order requiring Musilli and Baumgardner to escrow funds created an express trust. The elements required to establish the existence of an express or technical trust are as follows: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Bucci*, 493 F.3d at 640. Several cases have held that a statute requiring the creation of an escrow account does not rise to the level of an express trust. *Guerra v. Fernandez-Rocha* (*In re Fernandez-Rocha*), 451 F.3d 813 (11th Cir. 2006); *Hanft v. Church* (*In re Donald Hanft, M.D. P.A.*), 315 B.R. 617 (S.D. Fla. 2002). Indeed, in the plaintiff's brief in support of his motion for summary judgment, the plaintiff admitted that the order requiring the funds to be escrowed creates a *constructive* trust in favor of creditors. "It is well established that the defalcation provision of § 523(a)(4), like the provision of its predecessor, applies to express or technical trusts, but not to constructive trusts that courts may impose as an equitable remedy." *In re Penick*, 149 F.3d 1184, 1998 WL 344039*2 (6th Cir. May 28, 1998) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S. Ct. 151, Table (1934)). Accordingly, the plaintiff's claim under § 523(a)(4) must be dismissed.

### C. Section 727(a)(7)

The plaintiff also seeks the denial of the debtors' discharges under § 727(a), which provides in relevant part that:

> (a) The Court shall grant the debtor a discharge, unless-
> . . . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;
> . . .

11 U.S.C. § 727(a)(2).

Section 727(a)(7) provides as follows:

> (a) The Court shall grant the debtor a discharge, unless-
>
> (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider; . . . .

11 U.S.C. § 101(31)(A)(iv) states that the definition of an "insider" includes:

> (A) if the debtor is an individual-
> . . . . .
> (iv) corporation of which the debtor is a director, officer, or person in control.

"Section 727(a)(7) makes an individual debtor liable to the extent he or she engages in conduct on behalf of an insider which violates any of the first six subsections of Section 727(a)." *Barclays/American Business Credit, Inc. v. Adams*, 171 B.R. 298, 302 (W.D. Tenn. 1992) (quoting *In re Powell*, 88 B.R. 114, 117 (Bankr. W.D. Tex. 1988)).

11

Musilli and Baumgardner, as law partners, are insiders of Shores Legal Services. The factual findings made in the prior state court opinions clearly show that Musilli and Baumgardner, with the intent to hinder, delay or defraud the plaintiff, transferred and concealed the assets of Shores Legal Services within the year prior to the filing of Shores Legal Services' bankruptcy petition. The December 16, 2003, Oakland County Circuit Court order held that Musilli and Baumgardner flagrantly disregarded the court's order requiring them to escrow certain funds and prohibiting them from transferring any assets of the firm prior to complying with the escrow order. The December 14, 2005 order also specifically held that Musilli and Baumgardner transferred assets of MBWP in violation of the December 19, 2002, order and also received assets of MBWP in violation of the order. Accordingly, summary judgment is granted on the § 727(a)(7) count.

**Conclusion**

The plaintiff is granted summary judgment on Count I (§ 727(a)(7)). Musilli and Baumgardner are denied their discharges.

Summary judgment is granted as to Musilli on Count III (§ 523(a)(6)). Summary judgment will be granted as to Baumgardner on Count III (§ 523(a)(6)) when plaintiff's counsel certifies.

Count IV (§ 523(a)(7)) and Count II (§ 523(a)(4)) are dismissed.

An appropriate judgment will be entered after plaintiff's counsel files a certification that the criminal contempt order has been reinstated as to Baumgardner.

Not for Publication.

**Signed on December 26, 2007**

                                                                        **/s/ Steven Rhodes**

**Steven Rhodes**
**Chief Bankruptcy Judge**